# Michael Keating
## v.
# Michael Hayden.

*Trespass—Private Right of Way—Fence.*

In an action of trespass, brought to recover damages for throwing down a fence and leaving down bars across a private right of way, this court declines to interfere with the verdict for the defendant.

[Opinion filed January 10, 1889.]

Appeal from the Circuit Court of McHenry County; the Hon. Charles Kellum, Judge, presiding.

Mr. John B. Lyon, for appellant.

Messrs. A. W. Young and O. H. Gillmore, for appellee.

C. B. Smith, J.    This was an action in trespass, brought before a justice of the peace by appellant against appellee, to recover damages for throwing down a fence and leaving down bars on appellant's premises, through which openings, thus wrongfully made, appellant's cattle went on various occasions and injured his crops.    A trial was had before the justice, resulting in a verdict for the defendant, and an appeal was then taken to the Circuit Court.    A trial was had there, again resulting in a verdict for the defendant.    The plaintiff now brings the case here on appeal, and asks for a reversal because the verdict was against the evidence, and because the court erred in refusing plaintiff's second, sixth, and seventh to seventeenth (inclusive) instructions.

This controversy grows out of the use of private right of way through a forty-acre lot belonging to appellant and used by appellee.

As far back as 1846 Thomas Keating and Edward Loughlin owned land adjacent; one forty owned by Loughlin had no

means of access to the public road except across a forty-acre
lot owned by Thomas Keating. From 1846 to about 1866
Loughlin had crossed this forty to reach the public highway
under a parol license.

In 1886 Thomas Keating and Edward Loughlin entered into
a written contract, or lease, for the right, on the part of Lough-
lin and his heirs or assigns, to use this right of way across the
land described, in consideration of the payment to Thomas
Keating of $10. The lease appears to be a perpetual one, sub-
ject only to the power of Loughlin to put an end to it by sell-
ing the forty acres in question separate and apart from the
balance of his farm.

The lease described the line of the road as beginning at a
certain point and passing along the north side of the fence as
near as convenient to a point on the road named in the lease.

Loughlin and his tenants used this road without interrup-
tion until 1886, not always following the same line precisely,
but the deviations were not important, and were with the
knowledge of the plaintiff's grantor as well as the plaintiff
himself after he owned the land, and, so far as the evidence
shows, without objection from plaintiff or his grantor. Plaint-
iff desired to make some changes in his fields and to change
the line named in the lease, and some considerable length of
time before this dispute arose plaintiff had cut open another
line of travel through this forty for the defendant a little way
north of the original line of travel, which was accepted by
defendant, and this new route used for some time.

In 1886 plaintiff desired to inclose a portion of this forty
under a different fence, and so change the boundary of some of
his fields, and for that purpose built a new fence across the
new road, and closed it up, leaving the original line of travel
again open for defendant. Defendant refused to abandon the
new road and return to the old one, and on several occasions
tore down the fence where it crossed the road.

Plaintiff erected a pair of bars fourteen feet wide for the
use of appellee, using heavy poles, fourteen feet long, three to
five inches thick at the butts, for bars, in order to protect his
crops from the trespass of his cattle. The defendant refused

to replace these bars after going through, and frequently left them down, and on one occasion broke down one panel of sixteen feet of fence adjoining the road, and on another occasion broke down two panels of fence, alleging as a reason that there was not room enough for him to pass through the gate and that a tree had been cut across the road, preventing him from reaching the gate. A majority of the court are of opinion the defendant was justified in refusing to use the old road which had been first used; that he was justified in leaving the bars down which had been made for his use, because the bars were too heavy to handle; and that he was justified in cutting down the fence, because a fourteen-foot gate or bars was not wide enough for him to pass through with loaded wagons.

The majority of the court also hold there was no error in giving or refusing instructions, and that the sixth instruction asked for plaintiff was covered by the second of plaintiff's instructions, and that all of plaintiff's instructions from the seventh to the seventeenth, inclusive, were properly refused as not containing correct propositions of law, and the judgment is affirmed by a majority of the court.

*Judgment affirmed.*